IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALE S. BROWN,<br><br>                               Plaintiff,<br><br>v.<br><br>CON-WAY FREIGHT, INC.,<br><br>                               Defendant. | Civil Action No. 14-2055 (VMK/MV) |

**<u>PLAINTIFF DALE S. BROWN'S MEMORANDUM OF LAW</u>**
**<u>IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

**I.      INTRODUCTION**

This case arises from the failure of Defendant Con-way Freight, Inc. ("Con-way") to reinstate Plaintiff Dale S. Brown ("Brown") to the job Brown held at Con-way prior to his deployment to Iraq, when he recovered from his service-connected disability. Brown, who served as a reservist in the United States Naval Reserve, was called by our country to active duty in January 2006. At that time, he worked at Con-way as a freight loader and truck driver in a position called a driver sales representative ("DSR"). While deployed in Iraq, Brown injured his left shoulder. This injury prevented him from performing his prior DSR job when he was honorably discharged from the Navy in January 2009 and returned to Con-way. In February 2009, Con-way placed him in a lower paying customer service representative ("CSR") position it found him qualified to perform with his disability. By July 2012, however, Brown's injuries had healed to the point where his doctor medically cleared him to return to the DSR position. His disability was temporary. He provided his medical release to Con-way seeking to be reinstated in his prior DSR job. But Con-way did not reinstate him in his prior DSR position, and in a letter to Brown told him it had fulfilled any reemployment obligations when it placed him in the lower paying CSR position. Con-way is wrong.

To protect service members from being disadvantaged by active duty service, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C § 4301 *et seq.*, requires that an employer reemploy a returning service member in the position with the seniority, pay, and benefits the veteran would have held if he or she had not been called up for duty. Under USERRA, had Brown returned from military service with no injuries, Con-way should have reemployed him in his pre-service DSR position with his prior seniority rank. Unfortunately, Brown was injured while serving our country. But after continued medical

1

treatment, he recovered from these injuries and was able to return to the DSR position. The question before the Court is whether USERRA's reemployment protections extend to service members, like Brown, who recover from temporary service-related injuries sufficiently to perform their former positions. The answer is yes.

The language of USERRA Sections 4313 and 4316, and the Department of Labor's ("DOL") regulations regarding reemployment rights afforded temporarily disabled service members, demonstrate that Con-way violated USERRA by failing to reinstate Brown to his DSR position with his full seniority when he recovered from the injuries he sustained in military service. There are no material facts in dispute. This is purely a legal issue. Thus, Brown respectfully moves this Court for summary judgment on the claims for relief set out in paragraphs 17 and 18 of the Complaint.

## II.     FACTUAL BACKGROUND

Con-way is a provider of transportation services headquartered in Ann Arbor, Michigan. *See* Plaintiff Dale S. Brown's Statements of Undisputed Material Fact ("SOF"), ¶ 2.[1] Brown began working for Con-way in 1987, as a DSR at its Des Plaines, Illinois facility. SOF, ¶ 7. A DSR's primary job duties include loading and unloading freight, and operating a tractor trailer. SOF, ¶ 8. In May 2004, Brown transferred to Con-way's Rock Island facility as a DSR. SOF, ¶ 10. At that time, Brown's seniority rank[2] became May 2004. SOF, ¶ 11.

Brown also served in the United States Naval Reserve from 1999 to 2009. SOF, ¶ 1. Brown was ordered to active duty by the Navy in January 2006. SOF, ¶ 12. At that time, Brown

---

[1] Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1, Brown filed his Statements of Undisputed Material Fact contemporaneously with this Memorandum of Law.
[2] In this litigation, the parties have used the terms "seniority rank," "shift bidding seniority date," "seniority date for shift bidding purposes," "seniority date for job selection purposes," and "JSP seniority date" to refer to the seniority date Con-way assigns employees that controls priority for bidding on jobs. This motion will use "seniority rank," but the terms are interchangeable.

worked full time for Con-way as a DSR at the Rock Island facility, and his seniority rank was May 2004. SOF, ¶ 14. Con-way is Brown's employer within the meaning of USERRA. SOF, ¶ 5.

The Navy deployed Brown to Iraq where he served as a convoy security team driver in a Seabee unit. *See* Ex. H to Plaintiff Dale S. Brown's Motion for Summary Judgment ("Motion"), Brown Dep. Tr. 3/25/2015 at 206-215; *see also* Ex. I to the Motion, Letter from Theresa Veldhouse (BROWNDOCS.ID 152). During a night mission in Iraq, he injured his left shoulder. *Id.*; SOF, ¶ 14. The extent of his injuries included injuring his left shoulder, a recurring rotator cuff tear, and a biceps tendons tear. SOF, ¶ 15. In the Navy, he underwent surgeries and physical therapy for this injury. *See* Ex. H, 211-215. The Navy honorably discharged Brown in January 2009. SOF, ¶ 17.

At that time, Brown timely sought reemployment with Con-way, but informed Con-way that he was not physically able to perform the DSR position due to injuries he incurred in Iraq. SOF, ¶¶ 18, 19. In February 2009, Con-way placed Brown in a CSR position that paid less than his pre-service DSR position. SOF, ¶ 21. At that time, Con-way changed Brown's service rank to February 2009. SOF, ¶ 22. Brown's disability prevented him from performing the duties of the DSR position from January 2009 until July 2012. SOF, ¶ 20.

On July 12, 2012, Brown emailed his personnel supervisor, Trish Engle, that he was expecting a release to full driving duties from his doctor on July 25. SOF, ¶ 23. Soon after, Brown gave Engle a copy of the medical release from his orthopedics doctor, dated July 25, 2012, certifying that he was able to return to work with no restrictions and stating that he "may drive trucks." SOF, ¶ 24. However, Con-way did not reemploy Brown in his pre-service DSR position or provide him his May 2004 seniority rank. SOF, ¶ 25.

3

On October 3, 2012, Brown then sent a letter to Con-way, notifying the company again that he had "recovered to the degree to take [his] old job back" and that "federal law says I am entitled to my job and seniority rights." SOF, ¶¶ 26, 27, 28, 29, 30, 31. In response, Con-way sent Brown a letter, dated October 18, 2012, telling Brown that it had already complied with its obligations under USERRA by reemploying him as a CSR and if he wanted to work as a DSR he had to apply for an open position. SOF, ¶¶ 32, 33, 34, 35.

Brown applied for an open DSR position posted by Con-way, and Con-way hired him as a DSR in March 2013. SOF, ¶¶ 36, 37. Since returning to the DSR position in March 2013, Brown has been physically able to perform all of the functions of the position. SOF, ¶ 39. However, Con-way has never reinstated Brown's pre-service DSR seniority rank of May 2004. SOF, ¶ 38. Rather, Con-way changed Brown's service rank date to March 2013, as if he were a new hire. SOF, ¶ 38.

The parties have agreed by stipulation that had Con-way reemployed Brown in the DSR position with his pre-service seniority rank of May 2004, Brown would have earned compensation equivalent to the average compensation earned by three other DSRs during the time period of July 2012 to the present date. SOF, ¶ 40, 41. The difference between what Con-way paid Brown and the average of what it paid these three DSRs from July 30, 2012 until March 16, 2015 is $89,857.[3] SOF, ¶ 42. Thus, as a result of Con-way refusing to reemploy Brown in his DSR position with his May 2004 seniority rank when he recovered from his service-connected injuries and could perform the DSR position, Brown has suffered more than $89,857 in lost wages.

---

[3] July 30, 2012 is the first day of the pay period after July 25, 2012, the date Brown provided Con-way with the medical release. March 16, 2015 is the latest date for which Con-way has provided pay data.

**III.	DISCUSSION**

    **A.	Con-way Violated USERRA by Failing to Reemploy Brown as a DSR with His Full Seniority Once His Service-Connected Injuries Healed**

The issue presented here is whether USERRA required Con-way to reemploy Brown in his pre-service DSR position and provide his May 2004 seniority rank when the injuries Brown sustained in military service healed such that he could perform the DSR duties. No material facts are in dispute. This is a purely a question of law and an issue of first impression under USERRA.[4] As explained below, USERRA Section 4313 regarding reemployment, USERRA Section 4316 regarding seniority, and USERRA's implementing regulations regarding reemploying temporarily disabled service members, demonstrate that Con-way had an obligation to reemploy Brown in his prior DSR position with his May 2004 seniority rank when he recovered from the injuries sustained in Iraq. Because Con-way did not fulfill its duty under USERRA, this Court should grant summary judgment for Brown.

        1.	<u>Summary Judgment Standard</u>

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). To determine whether a genuine issue of material fact exists, a court should consider evidence in the light most favorable to the nonmoving party. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[4] While the Seventh Circuit has analyzed a similar issue under the Veterans' Reemployment Rights Act of 1974, that case is not dispositive of the issue presented here, as the court determined USERRA did not apply. *See Bowlds v. Gen. Motors Mfg Div. of Gen. Motors Corp.*, 411 F.3d 808, 809-812 (7th Cir. 2005).

587 (1986). Material facts are those facts that "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "'The mere existence of *some* alleged factual dispute between the parties'" cannot defeat summary judgment. *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998) (quoting *Anderson*, 477 U.S. at 247).

### 2. USERRA Is to Be Construed Liberally in Favor of Service Members to Accomplish the Statute's Purposes

In enacting USERRA, Congress sought to protect men and women who choose to serve their country through military service from the added burden of having their military service negatively affect their civilian employment. In fact, USERRA specifically sets out its purposes as (1) encouraging military service by "minimizing the disadvantages to civilian careers and employment which can result from such service," (2) requiring prompt reemployment after the completion of military service, and (3) prohibiting employer's discrimination against employees who serve in the military. 38 U.S.C. § 4301(a). The legislative history shows that in enacting USERRA, Congress intended to impose new reemployment requirements on employers, as well as reaffirm protections already afforded service members under the Veterans Reemployment Rights Act ("VRRA"), the precursor to USERRA. Uniformed Services Employment and Re-employment Act of 1994, H.R. Rep. No. 103–65, 103rd Cong., 1st Sess.1993, 1994 U.S.C.C.A.N. 2449, 2456–57 (1994). ("The reported bill would . . . 6. Reaffirm that a protected individual is generally entitled to reemployment in the same position which would have been attained if he or she had been continuously employed. 7. Require an employer to make reasonable efforts to qualify or requalify a protected returning individual for an appropriate

position. 8. *Require an employer to make reasonable efforts to accommodate the service-connected disability of a protected person*.") (emphasis added)

The courts have made clear that to accomplish its purposes, USERRA is to be liberally construed in favor of military service members who serve our country. *Davis v. Advocate Health Ctr. Patient* Care Exp., 523 F.3d 681, 683-84 (7th Cir. 2008) (Courts should "construe USERRA liberally in favor of veterans seeking its protections."); *McGuire*, 152 F.3d at 676 ("USERRA is to be liberally construed in favor of those who served their country.") (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). Thus, the issue presented in this case should be "liberally construed in favor of" service member Brown. *See id.*

    3.    <u>USERRA Requires Reemployment of Service Members Who Recover from Their Service-Connected Disabilities to the Positions They Would Have Held If Not Called to Serve</u>

Under the reemployment provisions of USERRA, the goal is for the service member to return to the position in which the service member would have been employed if his or her continuous employment had not been interrupted by military service. *See* 38 U.S.C. § 4313(a)(2)(A) (setting out the priority for reemployment of service members who were, like Brown, absent for military service for more than 90 days). USERRA's implementing regulations issued by DOL describe the job position identified in Section 4313(a)(2)(A) as the "escalator position," which means that the employer must reemploy the service member in the "job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service" and "that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service." 20 C.F.R. § 1002.191. USERRA Section 4313 also requires an employer to use "reasonable efforts"

7

to qualify a service member who incurred a disability during military service for his or her escalator position. 38 U.S.C. § 4313(a)(3); 20 C.F.R. § 1002.226.

There can be no dispute that under USERRA Section 4313, had Brown returned from Iraq without injuries, Con-way would have reemployed him in the DSR position with his May 2004 seniority rank he held immediately before he was deployed. That is Brown's escalator position. This Court need only decide if Brown's right to this position disappeared simply because he was injured in Iraq and then recovered. The answer must be no.

USERRA's principal reemployment goal is to return all service members, including those with temporary disabilities, to their escalator positions. *See* 38 U.S.C. § 4313(a)(2); 20 C.F.R. § 1002.191. USERRA requires employers to use reasonable efforts to meet this goal. 38 U.S.C. § 4313(a)(3); 20 C.F.R. § 1002.226. While the USERRA statute does not *specifically* address the reemployment of a temporarily disabled service member, like Brown, whose service-connected disability later healed to allow him to perform his escalator position, there is authority for the court to consider in analyzing this issue. In such cases where Congress has not directly addressed the precise question at issue in the statutory language, courts should defer to an agency's reasonable interpretation. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984); *Middleton v. City of Chicago*, 578 F.3d 655, 661-62 (7th Cir. 2009). Here, that would be DOL's implementing regulations. *See* 38 U.S.C. § 4331(a).

In its commentary to USERRA's implementing regulations, DOL explains that employers have an affirmative duty to reemploy temporarily disabled service members into their escalator positions when these individuals recover: "A returning service member may have rights under USERRA based on a service-related disability that is not permanent." Veterans' Employment and Training Service, 70 Fed. Reg. 75,246, 75,277 (Dec.19, 2005), 2005 WL

3451172, *53 (explaining 20 C.F.R. § 1002.226). DOL states that when a returning employee has a temporary service-connected disability, the employer should reemploy the service member in an interim position until he or she recovers:

> A service member who incurs a temporary disability may be entitled to interim reemployment in an alternate position provided he or she is qualified for the position and the disability will not affect his or her ability to perform the job. If no such alternate position exists, the disabled service member would be entitled to reinstatement under a "sick leave" or "light duty" status until he or she completely recovers.

*Id.* DOL's language demonstrates that after the service member recovers from a service-connected disability, USERRA requires the employer to move the service member from an interim position, sick leave, or light duty status to the individual's escalator position. *Id.*

In this case, Brown returned from military service in January 2009 with an injury that prevented him from performing his pre-service DSR position. In February 2009, Con-way placed him in a CSR position, which it deemed him qualified to perform with his injuries. By July 2012, Brown's injuries had healed to the point where his physician medically cleared him to perform the duties of the DSR position. His disabilities were temporary. The CSR position was an "interim reemployment" position. *See id*. When Brown recovered from the injury he incurred in Iraq and was medically cleared to return to his pre-service DSR position, Con-way had an obligation to reemploy him in that position with his prior seniority rank.

DOL also makes clear that under USERRA employers have a continuing duty to accommodate service members' service-connected disabilities, even after an initial reemployment. For example, DOL explains that for service members with service-connected disabilities that surface after initial reemployment, an employer should restart the reemployment process: "If the disability is discovered after the service member resumes work and it interferes with his or her job performance, then the reinstatement process should be restarted under

9

USERRA's disability provisions." 70 Fed. Reg. at 75,277. This commentary, read alongside DOL's interpretation that temporarily disabled service members should be provided an interim position, light duty, or sick leave status, and then moved to their escalator positions when they recover, demonstrates that USERRA's protections for disabled service members are unique and continue past initial reemployment. To keep a recovered service member in a lesser position when he is able to perform his escalator position would contravene the basic USERRA tenant that service members should, if at all possible, return to the positions they would have held but for their military service.

DOL's interpretation of USERRA Section 4313 is consistent with the core purpose of USERRA of not allowing those service members to be disadvantaged because of their service to our country; it is in no way arbitrary, capricious or contrary to the statute's goals. *See* 38 U.S.C. § 4301(a); *Chevron*, 467 U.S. at 843-45; *Middleton*, 578 F.3d at 661-62. Therefore, this Court should defer to DOL's interpretation and apply DOL's analysis to find that when Brown recovered from his temporary service-connected disability, USERRA required Con-way to move Brown from his interim CSR position to his prior DSR position with his May 2004 seniority rank. *See Chevron,* 467 U.S. at 843-44 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."); *see also Wrigglesworth v. Brumbaugh*, 121 F.Supp.2d 1126, 1136-37 (W.D. Mich. 2000) (Under USERRA, the "interpretation of the Secretary of Labor is entitled to deference in the absence of an interpretation that is arbitrary, capricious, or manifestly contrary to the statute."); *cf. Middleton*, 578 F.3d at 661-62 (finding that deference to DOL's interpretation of USERRA was not required

where that interpretation conflicted with a different federal statute). Applying DOL's analysis, Con-way violated USERRA Section 4313 in July 2012 when it refused to reemploy Brown in the escalator position that he could then perform.

> 4. USERRA Separately Requires Employers to Reinstate Returning Service Members' Full Seniority

The aim of USERRA Section 4313 is to reemploy service members in the positions with the seniority, benefits, and pay the service members would have attained had they not been called to serve our country. *See* Section III.A.3 *supra*. USERRA Section 4316 separately guarantees reemployed service members the seniority and benefits they would have had if they had been continuously employed. Under Section 4316 a reemployed service member is entitled to:

> the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

38 U.S.C. § 4316(a). DOL's regulations explain that an employer should determine a returning service member's seniority by calculating the seniority the service member would have received if he or she had not been called to duty, but rather had been continuously employed:

> The reemployment position includes the seniority, status, and rate of pay that an employee would ordinarily have attained in that position given his or her job history, including prospects for future earnings and advancement. The employer must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service.

20 C.F.R. § 1002.193.

Thus, Con-way violated USERRA Section 4316, as well as Section 4313, by failing to grant Brown his pre-service seniority rank of May 2004. 38 U.S.C. §§ 4313, 4316(a). A DSR's seniority rank controls his or her priority order for bidding jobs, which in turn affects his or her

11

pay. Con-way has never provided Brown his May 2004 seniority rank. Con-way did not provide it when it reemployed Brown as a CSR in February 2009. Nor did Con-way provide it in July 2012 when Brown recovered from the injuries he sustained in Iraq and Con-way had a duty to reemploy Brown in his escalator position. Con-way again failed to provide it after Brown applied for an open DSR position and Con-way hired him in March 2013. In fact, Con-way changed Brown's seniority rank from February 2009 to March 2013, treating him as if he were a new hire. As a result of Con-way's failure to reinstate Brown's May 2004 seniority rank in violation of USERRA Section 4316, Brown has and continues to suffer a significant loss of income. *Id*.

### B. The Court Should Award Brown Back Pay and Order Reinstatement of His May 2004 Seniority Rank

As demonstrated above, Con-way violated both USERRA Sections 4313 and 4316 by failing to reemploy Brown in his DSR position and provide him his seniority rank of May 2004 when Brown recovered from the injuries he sustained in Iraq. Brown seeks monetary damages in the form of back pay with interest and an order to reinstate his seniority rank of May 2004.

Brown and Con-way significantly mitigated the back pay damages owed Brown when Brown applied for and Con-way hired him into an open DSR position in March 2013. Unfortunately, Con-way refused to reinstate Brown's pre-service seniority rank when it hired him into an open DSR position. As a result, Brown's back pay damages continued to accrue because he made significantly less as a DSR with a March 2013 seniority rank than he would have made as a DSR with his May 2004 seniority rank. The back pay damages are calculated based on the parties' stipulations that had Con-way reemployed Brown as a DSR with the seniority rank of May 2004, he would have earned compensation equivalent to the average compensation earned by three other DSRs during the time period of July 2012 to the present

12

date. The difference between that amount and the lesser amount Brown actually earned from July 30, 2012 to March 16, 2015 is $89,857.

Thus, this Court should grant Brown summary judgment and (1) find Con-way liable under USERRA for not reemploying Brown in his pre-service DSR position in July 2012; (2) find Con-way liable under USERRA for not providing Brown his May 2004 seniority rank; (3) order Con-way to recognize Brown's seniority rank as May 2004; and (4) award Brown his lost wages (in excess of $89,857), plus prejudgment interest on that amount.

## V.  CONCLUSION

There is no dispute as to the material facts presented in this Motion. Rather, the issue presented is a legal question only. This Court must decide if Con-way's duty to reemploy Brown extended to the time when Brown recovered from his injuries and, thus, required Con-way to reemploy Brown as a DSR with his May 2004 seniority rank. As explained above, USERRA's reemployment and seniority requirements, DOL's implementing regulations requiring reemployment of temporarily disabled service members, and the case law requiring courts to construe USERRA in favor of the service member, reveal that the answer is yes. Thus, this Court should find that Con-way failed to meet its obligations to Brown under Sections 4313 and 4316 of USERRA and grant Brown summary judgment.

Dated: June 9, 2015	Respectfully submitted,

        VANITA GUPTA
        Acting Assistant Attorney General
        Civil Rights Division

        DELORA L. KENNEBREW
        Chief
        Employment Litigation Section

        /s/ Patricia L. Stasco
        KAREN D. WOODARD
        (MD Bar No. Not Issued)
        Deputy Chief
        PATRICIA L. STASCO
        (D.C. Bar No. 490041)
        JEFFREY MORRISON
        (MO Bar No. 44401)
        Senior Trial Attorneys
        U.S. Department of Justice
        Civil Rights Division
        Employment Litigation Section
        950 Pennsylvania Avenue, NW
        PHB 4613
        Washington, D.C. 20530
        Telephone: (202) 353-2297
        Facsimile: (202) 514-1105
        Email: patricia.stasco@usdoj.gov

        **ATTORNEYS FOR DALE S. BROWN**

## CERTIFICATE OF SERVICE

      On June 9, 2015, I served the foregoing **Plaintiff Dale S. Brown's Memorandum of Law in Support Motion for Summary Judgment** on all counsel of record via the court's ECF system:

Susan Bassford Wilson, Esquire
Constangy, Brooks & Smith, LLP
200 S. Wacker Drive, Suite 3100
Chicago, IL 60606
SWilson@constangy.com

Frank Shuster, Esquire
Constangy, Brooks & Smith, LLP
230 Peachtree St., NW, Suite 2400
Atlanta, GA 30303-1557
FShuster@constangy.com

                                                /s/ Patricia L. Stasco

                                                PATRICIA L. STASCO