IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALE S. BROWN,<br><br>        Plaintiff,<br><br>v.<br><br>CON-WAY FREIGHT, INC.,<br><br>        Defendant. | Civil Action No. 14-2055 (VMK/MV) |

**PLAINTIFF DALE S. BROWN'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
<u>CON-WAY FREIGHT INC.'S MOTION FOR SUMMARY JUDGMENT</u>**

**I.     INTRODUCTION**

Defendant Con-way Freight, Inc. ("Con-way") argues that this Court should dismiss Plaintiff Dale S. Brown's claims because it had no continuing reemployment obligation under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") to place Brown in his pre-service driver sales representative position ("DSR") with his full benefits in July 2012, when he recovered sufficiently from his service-connected shoulder injury to be medically cleared to perform in this position. As explained below, Con-way's argument is wholly unsupported by the text of USERRA, its implementing regulations, or case law. Con-way also argues that even if this Court finds that Brown's USERRA claims are meritorious, the Court should invoke discretionary estoppel doctrines to deny Brown relief under USERRA. Con-way fails to prove that these affirmatives defenses should be granted as a matter of law.

**II.    DISCUSSION**

The central USERRA argument presented by Con-way's motion for summary judgment is that Brown cannot state a claim under USERRA because after it reemployed him as a customer service representative ("CSR") in 2009, it owed him no further duty under USERRA. *See* Defendant Con-way Freight Inc.'s Memorandum of Law in Support of Its Motion for Summary Judgment, Dkt # 62 ("Con-way Mem."), at 8. As discussed herein, Con-way has failed to prove that Brown cannot prevail under Section 4313 or 4316, and thus this Court should deny Con-way summary judgment.

   **A.     Brown States a Claim for Reemployment Rights as a DSR Under Both Sections 4313 & 4316(a) of USERRA**

       1.     <u>In 2012, Con-way Had a Continuing Reemployment Obligation to Brown Under USERRA Section 4313</u>

In a conclusory fashion, Con-way argues that USERRA Section 4313's reemployment rights "exist at the instant of reemployment and *create no continuing obligations*." Con-way Mem., at 5 (emphasis added). Con-way also claims that "USERRA's text, its underlying purposes and its

1

implementing regulations makes clear" that there can be no continuing obligations under Section 4313 after a service member is initially reemployed in any capacity. *Id.* However, Con-way's arguments blatantly ignore the obligations USERRA places on employers reemploying disabled service members, like Brown.

As explained in Brown's memorandum in support of his motion for summary judgment, the text of USERRA Section 4313 requires an employer to use "reasonable efforts" to accommodate a disabled service member to qualify for his or her escalator position or a position as close as possible. *See* 38 U.S.C. § 4313(a)(3)-(4); Brown Mem. at 6-11. Con-way attempts to interpret USERRA's text as limiting these reasonable efforts to the instant of reemployment. However, USERRA does not place any such limitation on this requirement. *Id.* Rather, this court should be guided by the Department of Labor's ("DOL") USERRA implementing regulation, 20 C.F.R. § 1002.226, and the DOL's corresponding commentary regarding that regulation, in determining the scope of the "reasonable efforts" requirement under Section 4313. In that guidance, DOL states that "reasonable efforts" may include delays for interim positions for service members who need additional time to heal. *See* Veterans' Employment and Training Service, 70 Fed. Reg. 75,246, 75,277 (Dec.19, 2005), 2005 WL 3451172, *53 (explaining 20 C.F.R. § 1002.226); Brown Mem. at 7-10. DOL also notes that service members with service-connected disabilities that surface after initial reemployment are entitled to continuing obligations from their employers: "If the disability is discovered after the service member resumes work, and it interferes with his or her job performance, then the reinstatement process should be restarted under USERRA's disability provisions." *Id.* Thus, contrary to Con-way's assertion, USERRA's implementing regulations demonstrate that USERRA's reemployment rights for disabled service members *do* continue past initial reemployment.

Moreover, the text of USERRA also specifically identifies its "purposes" as including encouraging military service by "minimizing the disadvantages to civilian careers and employment,"

2

and requiring prompt reemployment after the completion of military service. 38 U.S.C. § 4301(a); Brown Mem., at 6-7. Finding that USERRA allows an employer to keep a disabled service member who has recovered sufficiently to perform his escalator position in a lower paid position contravenes this critical purpose of USERRA. Therefore, Con-way's claim that USERRA's text, underlying purposes, and implementing regulations support dismissing Brown's case lacks merit.

        2.      <u>Con-way Relies on Case Law Regarding Reemployment of *Non-Disabled* Service Members that Does Not Apply to Brown's Claims</u>

Con-way's assertion that the "case law uniformly recognizes" that USERRA's Section 4313 reemployment rights "create no continuing obligations" is based upon a faulty legal analysis that does not apply to Brown's circumstances. Specifically, Con-way relies solely on cases involving non-disabled service members that have no relevance to the "reasonable efforts" obligation Section 4313 places on employers to reemploy an injured service member. In fact, some of the cases cited by Con-way do not even address Section 4313, the relevant portion of USERRA that controls here.

Con-way relies principally on the Fourth Circuit's decision in *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006), to support its position that it had no continuing obligation to Brown once his medical condition improved to the point at which he could resume his DSR position. Con-way Mem., at 1, 5-6. However, neither *Francis* nor any of the other cases cited by Con-way are dispositive of the issue presented here. Con-way erroneously asserts that *Francis* held that the rights to reemployment exist at the instant of reemployment only. *Id.* The court actually held that USERRA's reemployment right "applies to protect a covered individual only as to the act of rehiring." *Francis*, 452 F.3d at 305. The court did not address how the employer's obligations under USERRA in the "act of rehiring" applies to a service member with a disability because the returning service member in *Francis* did not suffer a service-connected disability requiring the employer to use "reasonable efforts" to accommodate her under USERRA Section 4313. In *Francis*, it was undisputed that the employer had fully and promptly reemployed the non-disabled service member

3

in her appropriate escalator position. *Id.* at 301. In fact, *Francis* was not a reemployment case, but instead addressed whether a properly reemployed service member could later raise a *discrimination* claim under USERRA's reemployment protections based on actions unrelated to reemployment. *Id.* at 303-05. The court simply concluded that the service member could not. *Id.* This ruling is irrelevant to Brown's reemployment claim.

The remaining cases Con-way relies on to support its position that it met its re-employment obligations to Brown in 2009 are inapposite to the facts presented by this case. None of those cases address the reemployment rights of disabled service members. In *Crews v. City of Mt. Vernon,* 567 F.3d 860, 865-68 (7th Cir. 2009), the Seventh Circuit analyzed a non-disabled service member's USERRA claims related to his Section 4316(b)(1) right to a leave of absence, and his allegations of discrimination and retaliation, none of which apply in the current case. Similarly, *Clegg v. Arkansas Dep't of Corrections*, 496 F. 3d 922, 930-31 (8th Cir. 2007), involves a service member who did not suffer from a service-related disability or raise any issues about the employer's reasonable efforts to accommodate a disability; instead, the service member was promptly reemployed in her escalator position. Finally, Con-way cites *Petty v Metro. Gov't of Nashville & Davidson Cnty*, 687 F.3d 710, 714-16 (6th Cir. 2012), in which the Sixth Circuit affirmed a trial court's award of damages to a non-disabled returning service member, who the circuit court previously decided was entitled to summary judgment because his employer had reemployed him in a lesser position than his full escalator position. Con-way's argument that it had no continuing reemployment obligation to Brown is unsupported by these cases.

### 3. Conway Misinterprets *Bowlds* and its Applicability to this Case

Con-way also asserts that *Bowlds v. Gen. Motors Mfg Div. of the Gen. Motors Corp. Co.*, 411 F.3d 808 (7th Cir. 2005), supports its position that it had no continuing reemployment duty to Brown. *See* Con-way Mem., at 6. At first glance, the *Bowlds* case, involving a service member who healed from

4

service-related injuries, may appear to be relevant. However, a full reading of the decision reveals that *Bowlds* has no precedential value. Con-way fails to disclose that the *Bowlds* court specifically held that USERRA did not apply to the plaintiff's claims. 411 F.3d at 810-813. This holding cannot be ignored in favor of Con-way's reliance on *dicta*.

The *Bowlds* court rejected the plaintiff's argument that USERRA applied to his claims, and instead applied the Veterans' Reemployment Rights Act ("VRRA") to analyze the merits of those claims. The Seventh Circuit first explained that because USERRA cannot be applied retroactively, and because the service member's claims accrued before the enactment of USERRA, his "USERRA claims fail." *Id.* at 811. Then examining the service member's claim under the VRRA, the court found that Bowlds did not state a cause of action. *Id.* at 812-13. The Seventh Circuit's opinion makes clear that its substantive analysis of Bowlds's reemployment claim was solely under the VRRA. *Id.*

At the conclusion of the section of the opinion entitled, "Bowlds's VRRA Claim," the Seventh Circuit acknowledged that its decision made under the VRRA seemed particularly unfavorable to injured service members, like Bowlds. *Id.* at 813. In *dicta*, the court essentially called for a congressional remedy. *Id.* The Seventh Circuit's opinion in *Bowlds* did not determine the nature and extent of any substantive rights created by USERRA for injured service members, but rather held that the court could not consider Bowlds's claim because Congress had not amended USERRA to make its provisions retroactive. *See id.* at 810-11. Thus, in referring to a potential legislative fix for Bowlds and service members like him, the court is referring to the lack of *retroactivity* of USERRA.

In a footnote, Con-way also suggests that because the VRRA is the predecessor statute to USERRA, the Seventh Circuit's assessment of Bowlds's claims under the VRRA is applicable to Brown's claims under USERRA. *See* Con-way Mem. at 6, fn 2. While case law regarding the VRRA that is *consistent* with USERRA may be considered instructive in interpreting USERRA, *Bowlds* does not apply because it is *inconsistent* with USERRA. USERRA's legislative history shows that Congress

5

intended to create new and stronger reemployment rights for reservists, not just reaffirm existing rights under the VRRA. *See* H.R. Rep. No. 103–65, 103rd Cong., 1st Sess.1993, 1994 U.S.C.C.A.N. 2449, 2456–57 (1994) (Congress replaced the VRRA with USERRA to "to clarify, simplify, and, where necessary, *strengthen* the existing veterans' employment and reemployment rights provision;" increased reliance on military reservists requires that "[USERRA] *strengthen* the existing veteran's employment and reemployment rights provisions.") (emphasis added); S. Rep. No. 103–158, at 33 (1993) (stating that USERRA "would restructure, clarify, and *improve*" the VRRA) (emphasis added). The House Report also identifies new reemployment obligations for employers regarding reservists disabled during military service, including the new "reasonable efforts" obligation: "The reported bill would . . . 8. *Require* an employer to make *reasonable efforts* to accommodate the service-connected disability of a protected person." *Id.* (emphasis added); *see also* 38 U.S.C. § 4313. Thus, as the Seventh Circuit has recognized, "USERRA established additional rights and liabilities that did not exist under the VRRA." *Middleton v. City of Chicago*, 578 F.3d 655, 659 (7th Cir. 2009). *Bowlds* does not control because it is *inconsistent* with Congressional intent in enacting USERRA and is thus not dispositive of Brown's claim.

    4.  <u>Con-way Did Not Meet its Obligation to Brown Under USERRA Section 4316</u>

Separate from the rights protected by Section 4313, USERRA Section 4316 also guarantees reemployed service members the seniority they would have had if they had been continuously employed. 38 U.S.C. § 4316(a); 20 C.F.R. § 1002.193. Nonetheless, Con-way argues that the Court should dismiss Brown's Section 4316 claim because it is "dependent on the act of reemployment and accrues at that moment in time." Con-way's Mem., at 7. But Con-way admits that it reemployed Brown in 2009, and thus tacitly acknowledges that it fell under the obligations set forth in USERRA Section 4316(a) regarding seniority, at least at that time. Because Con-way failed to provide Brown his May 2004 seniority right when it reemployed him in 2009, it violated Section 4316. *See also* 20

6

C.F.R. § 1002.193. This violation did not cause Brown any financial harm while he was employed as a CSR because his seniority rank did not affect his CSR pay. However, Brown suffered a substantial loss in pay beginning in July 2012, due to his lower seniority rank. As Con-way has stipulated, if in July 2012 (when Brown was medically cleared to work as a DSR) Con-way had reemployed Brown as a DSR with his May 2004 seniority rank, he would have been paid the average salary of the three other DSRs, each of whom earned more salary than did Brown in that time period. *See* Brown's Statements of Undisputed Material Fact ("Brown SOF"), Dkt # 64, ¶¶ 40-42. Thus, as of July 2012 (and certainly no later than March 2013 when Con-way hired Brown into a DSR position) Brown began to accrue financial damages because of Con-way's failure to recognize his May 2004 pre-service seniority rank. Moreover, because USERRA has no statute of limitations, this Court need not consider the exact time Brown became aware of the financial injury he suffered due to Con-way's failure to re-employ him. *See* 38 U.S.C. § 4327(b). Thus, this Court should deny Con-way's motion to dismiss Brown's Section 4316 claim.

### B. Con-way Is Not Entitled to Summary Judgment on Any Doctrine of Estoppel

Conway argues that even if USERRA required Con-way to reemploy Brown in his pre-service DSR position and provide him his May 2004 seniority rank when Brown healed sufficiently to perform the position, this Court should invoke discretionally estoppel doctrines to deny Brown's USERRA claims. These estoppel arguments are unavailing as a matter of law.[1]

#### 1. Collateral Estoppel Does Not Bar Brown's Claims

In bringing this case, Brown seeks a ruling on two new issues, supported by new facts, that were not presented, available or even known at the time *Brown I* was decided. *See Brown v. Con-way*, 891 F. Supp. 2d 912, 918 (N.D. Ill. 2012). Nonetheless, Con-way continues to prosecute its collateral

---

[1] While Brown disputes facts material to Con-way's estoppel arguments, even assuming Con-way's facts, these arguments are insufficient to support judgment as a matter of law. *See* Brown's Response to Defendant's Statement of Undisputed Material Facts, ¶¶ 12-38 & Additional Facts.

7

estoppel argument asserting, without legal or factual support, that these issues are precluded by the court's decision in *Brown I*. However, Con-way fails to show that the current issues were decided in the prior case.

First, Con-way alleges that Brown should be estopped in this action because the court in *Brown I* addressed the issue of "whether Con-way met its responsibility under USERRA to first look for an equivalent position for which Plaintiff was qualified . . . before placing him in the lower paying CSR position." Con-way Mem., at 9 (quoting *Brown I*, 891 F. Supp. 2d at 918). Con-way claims that the prior court decided this issue based on its factual finding that Brown had a permanent disability. Con-way Mem., at 9-10. Con-way argues that these issue and fact determinations made by the prior court preclude Brown's current claims. *Id.* Con-way's argument must be rejected.

The issue and fact determinations identified by Con-way as having preclusive effect are not the same as the issues before this Court. *See, e.g., H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007) (finding that for a prior decision to be preclusive the issues in both cases must be the same). Brown does not dispute that the prior court decided that in 2009 Con-way met its reemployment responsibility under USERRA. The issues presented now, however, are different. Con-way admits so in the first sentence of its memorandum, where it states that it seeks dismissal of Brown's "claims that it violated Section 4313 and 4316 of [USERRA] by failing to immediately 'reemploy' him as a [DSR] in July 2012 with a job bidding seniority date of May 2004." Con-way Mem., at 1. Determining whether USERRA obligated Con-way to reinstate Brown in 2012 to his DSR position because he recovered sufficiently from his injuries, is different from the issue of whether Con-way properly reemployed Brown as a CSR in 2009. Indeed, the issues presented here could not have been litigated in the prior case because the factual predicate for the issues before this Court – Brown recovering from his military injuries sufficiently to return to the DSR position in July

2012 – could not have been presented to the court in the prior case that was decided in May 2012. *See Brown I*, 891 F. Supp. 2d at 912. Con-way also argues that the prior court made a factual finding that Brown's injury was permanent, which was allegedly central to the court's determination of the issue of whether Con-way properly reemployed Brown in the CSR position in 2009. Con-way argues that this *factual determination* precludes Brown's claims in this case. Con-way is wrong. The prior court never determined the permanency of Brown's military injuries because that fact was not at issue in the prior case. Instead, the prior court merely reiterated this undisputed fact in its factual recitation about the case: "*these facts are undisputed* . . . On February 20, 2008, Brown underwent a functional capacity evaluation to determine his ability to work . . . These restrictions are permanent, as Brown's condition is not expected to improve." *Brown I*, 891 F. Supp. 2d at 913-914 (emphasis added). This is neither a factual nor a legal conclusion.

Even had the prior court made a factual determination regarding the permanency of Brown's injuries, it would not be a proper basis for issue preclusion, as Con-way admits that the facts regarding Brown's military-connected disability have changed since the prior case. Con-way acknowledges that Brown's military injuries prevented him from performing as a DSR from January 2009 until July 25, 2012, that Brown then provided Con-way with a medical release from his doctor stating that he had no more work restrictions, and that since at least March 2013 (when he started as a DSR again) Brown has been physically able to perform all of the functions of a DSR. Brown SOF, Dkt # 64, at ¶¶ 20, 24, 39. Thus, the parties agree that Brown was disabled due to his military service, but that he healed sometime between July 2012 and March 2013 sufficiently to perform as a DSR again. For Con-way to argue that Brown is now precluded from bringing his current claims because of the parties' statements of undisputed facts from the prior case that Con-way now admits have changed, is absurd. The Supreme Court has held that even when the issues are the same (which is not the case here), "[c]hanges in facts essential to a judgment will render collateral estoppel

9

inapplicable in a subsequent action raising the same issues." *Montana v. United States*, 440 U.S. 147, 159 (1979). Thus, this Court should reject Con-way's estoppel argument as a matter of law..

The second issue Con-way identifies as having preclusive effect on Brown's current claims is the prior court's determination regarding Brown's May 2004 seniority rank. *See* Con-way Mem., at 9-10. The prior court described the claim as whether, "Con-way violated USERRA when it made [Brown's] JSP seniority date Feb. 6, 2009." *Brown I*, 891 F. Supp. 2d at 919. The court stated that Brown brought that claim under USERRA's Section 4311 *discrimination* provision. *Id.* In contrast, the issues before this Court are whether Section 4313 required Con-way to reemploy Brown in his DSR position when he recovered sufficiently from his disability, and whether Section 4316 separately required Con-way to provide Brown his pre-service seniority rank of May 2004 upon reemployment. The legal standard under Section 4311 is distinct from those under Sections 4313 and 4316, and thus cannot have preclusive effect.

Moreover, even if the issues were the same, the seniority issue was not actually litigated in Brown's prior case. Instead, the court decided that Brown had not presented evidence that he was injured as a result of not having his May 2004 seniority rank recognized when he was a CSR, and thus, did not analyze the underlying legal issue. *Brown I*, 891 F. Supp. 2d at 920.

### 2. Brown's Claims Are Not Barred by Judicial Estoppel

Con-way's assertion that Brown's USERRA claims are barred by the doctrine of judicial estoppel is also without merit. The position taken by Brown in this case is not "clearly inconsistent" with the positions he took in his prior lawsuit, or in seeking disability benefits from the United States Department of Veterans Affairs ("VA") or the Department of the Navy ("Navy").

While there is no strict formula, the Supreme Court has identified three factors that inform whether to apply the doctrine of judicial estoppel: (1) "a party's later position must be *clearly inconsistent* with its earlier position"; (2) whether the party has succeeded in the first proceeding so

acceptance of the inconsistent position in the latter proceeding would create a perception one of the courts was misled; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party. *New Hampshire v. Maine*, 532 U.S. 732, 750-51 (2001) (internal citation omitted) (emphasis added). Moreover, because judicial estoppel is intended to prevent "improper use of judicial machinery," it is "an equitable doctrine invoked by a court at its discretion." *Id.* at 749-50 (2001) (internal quotation marks and citation omitted).

None of the cases Con-way relies upon involve claims of USERRA, VA benefits, or military benefits. Instead, Con-way relies most heavily on cases involving plaintiffs who were awarded Social Security Disability Insurance ("SSDI") benefits and then later sought additional damages under the Americans with Disabilities Act ("ADA") of 1990. *See* Con-way Mem., at 10-12 (citing *Butler v. Vill. of Round Lake Police Dep't*, 565 F.3d 1020 (7th Cir. 2009); *Johnson v. ExxonMobil Corp.*, 426 F.3d 887 (7th Cir. 2005); *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390 (7th Cir. 2005)); *but see DeVito v. Chicago Park Dist.*, 270 F.3d 532, 535 (7th Cir. 2001) (holding that judicial estoppel does not apply because plaintiff obtained benefits upon a claim of total disability without suing for them). In these cases, because the plaintiffs obtained SSDI benefits by stating that they could not work, they were estopped from then pursing ADA claims arguing that they could perform the essential functions of their previous jobs. *See id.* Even in these types of cases, however, the Supreme Court has found that there are circumstances where the two positions can exist consistently side-by-side: "[I]n context, these two seemingly divergent statutory contentions are often consistent [and] [t]hus pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 797-98, 802-803(1999) (vacating the appellate court's granting of summary judgment).

Con-way argues that in his prior lawsuit, Brown "succeeded in convincing the court that he had a permanent shoulder disability." Con-way Mem., at 12. Not so. As explained in Section III.B.1,

11

*supra*, the prior court merely stated in its factual recitation that Brown's "restrictions are permanent, as Brown's condition *is not expected to improve*." *Brown I*, 891 F. Supp. 2d at 913-914 (emphasis added). But here, Con-way admits that the fact of Brown's disability changed. *See* Brown SOF, at ¶¶ 20, 24, 39. Therefore, judicial estoppel cannot apply here because Brown has not taken "clearly inconsistent" positions, rather the factual circumstances simply changed over time. Moreover, Brown did not *succeed* in convincing the court of anything in *Brown I*; rather, Con-way won on all the disputed issues. Because the *Brown I* court found against him, this Court has no reason to resort to its equitable powers to prevent Brown from recovering in this case. Con-way attempts to circumvent this problem by arguing that it "relied" on Brown's positions in *Brown I* "in creating a CSR position for him at the time he was reemployed in 2009." Con-way Mem., at 14. But Con-way placed Brown in the CSR position to comply with USERRA before *Brown I* was even litigated, not because of any judgment in that case. Con-way apparently argues that if it had known that Brown's disability might heal three years later, it would never have employed him as a CSR. This nonsensical argument flies in the face of USERRA's requirements. Con-way's claim for judicial estoppel based on *Brown I* lacks any legal merit and the Court should find against it as a matter of law.

Con-way also erroneously argues that Brown took a position before the VA in 2009 contrary to the position he takes in this case. Con-way Mem., at 13. The positions, however, are not "clearly inconsistent" because the criteria for receiving VA disability benefits are wholly distinct from a determination of whether Brown's injury had healed sufficiently for him to perform as a DSR. When a veteran applies for benefits, the VA conducts its own medical examination based on criteria contained in federal regulations, and assigns disability ratings. *See* Exhibit 5 to Brown's Response to Con-way's Statement of Undisputed Material Facts, Affidavit of William R. Russo ¶¶2-4. For service members who have multiple military-connected disabilities, like Brown, the VA rates each disability then combines them pursuant to a formula contained in federal regulations. *Id.* The VA's process for

12

awarding disability benefits does not, in any way, include a vocational assessment. *Id.* ¶ 5. Moreover, many veterans rated 50% or higher by the VA, like Brown, still work full time in positions that are physically rigorous. *Id.*; *see also* Con-way SOF Ex. 10, Dkt # 61-11 (explaining Brown's individual disability ratings and total rating). Thus, Brown can both be entitled to VA benefits for his service-related injuries and still be able to perform his job functions as a DSR.

Moreover, the VA made its findings in 2009, whereas this case concerns Brown being medically cleared by his orthopedic doctor to perform the DSR position in July 2012. Brown's positions regarding his condition were certainly not inconsistent in 2009. Fortunately, Brown's medical injuries improved over time. His current position simply reflects the fact that with the passage of time, his medical condition changed. There is no basis for judicial estoppel based on Brown's position taken with the VA in 2009.

Finally, Con-way argues that Brown should be estopped from bringing this claim because in February 2013, Brown submitted a petition to the Navy's Physician Evaluation Board ("PEB"), which found Brown to have a physical disability rating of 20% and placed Brown on the Permanent Disability Retired List ("PDRL"). Con-way Mem., at 13. Again, Con-way's argument fails because the criteria employed by the PEB is different than whether Brown can perform the DSR position. The PEB, a part of the Secretary of the Navy' Council of Review Boards ("SECNACORB"), administers the Department of the Navy Disability Evaluation System. *See* Exhibit 6 to Brown's Response to Con-way's Statement of Undisputed Material Facts, Declaration of John Reeser ("Reeser Decl.") ¶¶ 2, 3. The PEB is a fact-finding board that evaluates all cases of physical disability on behalf of Marines and Sailors in accordance with the Secretary of the Navy Instruction 1850.4E (Disability Evaluation Manual). *Id.* ¶ 4. The PEB's purpose is to maintain a physically fit and combat ready force while affording due process and balancing the interests of the service member referred to the Board. *Id.* ¶ 5. Specifically, the PEB evaluates if the service member is fit for service, *i.e.* can

reasonably perform the physical requirements of his or her particular office, grade, rank, or rating in Navy or Marine Corps. *Id.* ¶¶ 6, 7. Like the VA, the PEB's evaluation does not include any vocational evaluation of whether the service member can perform his civilian position. *Id.* ¶ 8. As stated in its February 2013 decision, the PEB found Brown, a Navy Construction Mechanic, Class Petty Officer (CM2/E-5) "unfit to continue naval service with a total disability rating of 20%." Con-way SOF Ex. 9, Dkt # 61-10, at 1, 3. Such a finding does not in any way address whether the service member can perform his civilian job. Reeser Decl. ¶ 13. Thus, in petitioning for placement on the Navy's PDRL, Brown was asking the PEB to determine if he was fit to perform his position of a Navy Construction Mechanic. His Navy position and the PEB's determination of his fitness for duty in the Navy are wholly different than the DSR position and a determination that Brown can perform as a DSR. *Id.* ¶¶4-14; Brown SOF ¶¶ 24, 39. Because Brown's positions are not "clearly inconsistent," Brown's claim cannot be judicially estopped.

3. <u>Brown's Claims Are Not Barred by the Doctrine of Equitable Estoppel</u>

Finally, Con-way's equitable estoppel argument also fails. The case law cited by Con-way is inapplicable here, and Con-way fails to show it meets the elements of equitable estoppel. *See Georgia-Pac. Consumer LP v. Kimberly-Clark Corp.*, 749 F.Supp. 2d 787, 803-804 (N.D. Ill. 2010), aff'd 647 F.3d 723 (7th Cir. 2011) (finding equitable estoppel did not apply).

Brown did not make a misrepresentation to Con-way. As explained in Section III.B.1 *supra*, in Brown's prior case, both parties asserted as an undisputed fact that the restrictions set by the 2008 functional capacity evaluation were permanent and not likely to improve. *See Brown I*, 891 F.Supp.2d at 914; Pl. Resp. to Def. SOF, 1:10-cv-4556, Dkt # 38, at 27. As Con-way admits, in 2009 it "reasonably" relied on what Brown's doctors told it. *See* Con-way Mem., at 15. Brown also believed in 2009, based on his doctor's opinions, that his injuries might never heal, and therefore his statements in *Brown I* are not a misrepresentation.

14

Even if Brown should not have relied on his physician's assessment that he was unlikely to get better when describing his injury, Con-way never relied on this information to its detriment. Con-way argues that it relied on Brown's representation that his disability was permanent to create a CSR position for Brown, which it was not required to do. Con-way Mem., at 15. Con-way argues that but for Brown's representations it would not have done either and therefore could have avoided Brown's prior and current lawsuits. *Id.* Whether Brown's injuries were permanent or temporary, under USERRA Con-way had a legal obligation to use reasonable efforts to accommodate Brown's disability and place him in a position as close as possible to his escalator position. *See* 38 U.S.C. §4313; 20 C.F.R. § 1002.226. Had Con-way not reemployed Brown at all, Brown still would have brought his prior case. Whether Brown's injuries were permanent or temporary had no bearing on *Brown I*. Because Con-way cannot show that it detrimentally relied on Brown's description of his injury it cannot prove that Brown's USERRA claims are barred by equitable estoppel.

Finally, it is questionable whether judicial and equitable estoppel arguments are even applicable to Brown's USERRA claims. The Sixth Circuit has held that an employer's equitable affirmative defenses cannot serve as a bar to a service member's claim for reemployment because USERRA sets forth the only requirements necessary for a returning service member to be entitled to reemployment under Section 4312. *See Petty*, 687 F.3d at 721 (plaintiff service member's "alleged dishonesty cannot serve as a basis . . . for limiting [the service member's] right to reemployment") (internal citations omitted). Here, Con-way admits that Brown met USERRA's requirements for reemployment under Section 4312, so the Court should not use judicial or equitable estoppel to prevent Brown from claiming his reemployment rights.

## III.  CONCLUSION

For the reasons explained above, the Court should deny Con-way's motion for summary judgment.

Dated: June 30, 2015

Respectfully submitted,

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

DELORA L. KENNEBREW
Chief
Employment Litigation Section

/s/ Patricia L. Stasco
KAREN D. WOODARD
(MD Bar No. Not Issued)
Deputy Chief
PATRICIA L. STASCO
(D.C. Bar No. 490041)
JEFFREY MORRISON
(MO Bar No. 44401)
Senior Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW
PHB 4613
Washington, D.C. 20530
Telephone: (202) 353-2297
Facsimile: (202) 514-1105
Email: patricia.stasco@usdoj.gov

**ATTORNEYS FOR DALE S. BROWN**

**CERTIFICATE OF SERVICE**

On June 30, 2015, I served the foregoing **Plaintiff Dale S. Brown's Memorandum of Law in Opposition to Defendant Con-way Freight Inc's Motion for Summary Judgment** on all counsel of record via the court's ECF system:

Susan Bassford Wilson, Esquire
Constangy, Brooks & Smith, LLP
200 S. Wacker Drive, Suite 3100
Chicago, IL 60606
SWilson@constangy.com

Frank Shuster, Esquire
Constangy, Brooks & Smith, LLP
230 Peachtree St., NW, Suite 2400
Atlanta, GA 30303-1557
FShuster@constangy.com

                                                  /s/ Patricia L. Stasco
                                                  PATRICIA L. STASCO