IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALE S. BROWN,<br><br>       Plaintiff,<br><br>v.<br><br>CON-WAY FREIGHT, INC.,<br><br>       Defendant. | Civil Action No. 14-2055 (VMK/MV) |

**PLAINTIFF DALE S. BROWN'S REPLY
TO DEFENDANT CON-WAY FREIGHT INC.'S
<u>RESPONSE TO BROWN'S MOTION FOR SUMMARY JUDGMENT</u>**

## I. INTRODUCTION

In the recent wars in Iraq and Afghanistan, our country has relied heavily on military reservists like Dale Brown. These reservists accept the call to duty, put their careers and lives on hold, and risk their personal safety to serve our county. Unfortunately, some do not return, and others return injured. For the wounded warriors, USERRA's reemployment provisions require that employers accommodate their injuries, unless such efforts would cause an undue hardship.

Con-way should have accommodated Brown's service-connected injury in 2012, as USERRA required. Instead, when Brown was lucky enough to sufficiently heal from the injuries he sustained in Iraq to be able to return to his pre-service driver sales representative ("DSR") position, Con-way refused to reinstate him in that position. And when Con-way finally hired Brown into an open DSR position (proving that Brown was physically able to perform the position), Con-way still refused to provide Brown his full seniority.

"[T]he issue presented here is whether USERRA required Con-way to reemploy Brown in his pre-service DSR position and provide his May 2004 seniority rank when the injuries Brown sustained in military service healed such that he could perform the DSR duties." Brown Memorandum of Law in Support of Motion for Summary Judgment ("Brown Mem."), Dkt # 65, at 5. This is purely a legal question and a case of first impression.[1] This is not an attempt to create law out of whole cloth or ignore undisputed facts, as Con-way unpersuasively argues. USERRA's text in Sections 4313 and 4316, DOL's implementing regulations, and the case law

---

[1] In its Response (Dkt # 69) to Brown's Statements of Fact in Support of this Motion (Dkt # 64) ("Brown SOF"), Con-way admits all of Brown's assertions except Statement 19, which it states is incomplete. But, Con-way previously admitted this fact in discovery. *See* Brown's Motion, Ex. A (Dkt # 63-2). Con-way also asserts additional facts (Dkt # 70), which are duplicative of facts it relied on its cross motion (Dkt # 61). To respond to Con-way's additional facts, Brown incorporates as if fully set forth herein its prior response to these facts (*see* Dkt # 69). But the disputes over those facts are immaterial to Brown's motion.

requiring courts to construe USERRA in favor of the service member, support this Court granting Brown summary judgment. *Id*. at 13.

## II. DISCUSSION

### A. USERRA's Affirmative Defenses Already Limit Reemployment Rights

Con-way argues that if this Court accepts Brown's interpretation of USERRA Section 4313, it would create reemployment rights for disabled service members "indefinitely into the future" and place unlimited obligations on employers. *See* Con-way Response to Brown Mem. ("Con-way Resp."), Dkt # 68, at 2. This "slippery slope" argument lacks factual or legal support. A ruling in this case finding that Con-way had a continuing obligation to reemploy Brown would not create an indefinite obligation of reemployment for all employers. What Con-way fails to state is that USERRA already limits employers' reemployment obligations, thereby ensuring that a ruling in favor of Brown would not "wreak havoc on employers" nor "discourage employers from doing more than the law requires." Con-way Resp. at 4, fn 1. USERRA balances the reemployment rights of service members (including disabled service members) against the burdens on employers via the undue hardship and changed circumstances affirmative defenses. These affirmative defenses were available to Con-way in 2009 and are available now. Con-way disingenuously ignores the mitigating effect of these defenses.

While USERRA requires an employer to take "reasonable efforts" to accommodate a service member's disability (*see* 38 U.S.C. § 4313(a)(3); 20 C.F.R. § 1002.226), an employer is excused from reemploying a service member if it can establish that it would suffer an "undue hardship" in qualifying the service member or accommodating the service member's service-connected disability. 38 U.S.C. § 4312(d)(1)(B). USERRA defines "undue hardship" as "actions requiring significant difficulty or expense" by an employer in light of the nature and cost of the

action needed, the overall financial resources of the facility involved, the overall financial resources of the employer, and the type of operation of the employer. 38 U.S.C. § 4303(15). An employer is also excused from reemploying a service member when the employer has experienced "changed circumstances" that make reemployment "impossible or unreasonable." 38 U.S.C. § 4312(d)(1)(A). Because these are affirmative defenses, the defendant bears the burden of proving they apply. 38 U.S.C. §§ 4312(d)(2).

Con-way failed to plead the undue hardship or changed circumstances affirmative defense. *See* Con-way's 2d Am. Ans., Dkt # 52. That is likely because Con-way acknowledges it can prove neither. Con-way admits that it eventually hired Brown into an open DSR position in March 2013, and that Brown has been physically able to perform all of the functions of a DSR since that time. Brown SOF at ¶ 39. These admissions show that Con-way experienced virtually no hardship in reemploying Brown as a DSR after he healed, and its circumstances had not changed so that it was impossible or unreasonable to reemploy Brown.

Because USERRA provides mechanisms to relieve employers of their reemployment obligations under USERRA, this Court's granting of summary judgment to Brown would not create reemployment rights of "indefinite duration" for all disabled service members. Con-way's argument must be rejected.

> **B.    Con-way's Argument that Brown Must Prove that in 2009 He Told Con-way He Was Temporarily Disabled Is Contrary to USERRA**

Citing no legal basis, Con-way argues that Brown has "not offered a single fact showing that he informed anyone at Con-way that he had a temporary service-related disability when he sought reemployment pursuant to USERRA in 2009." Con-way Resp. at 2. Con-way's argument presumes that a disabled service member must correctly state whether his disability is permanent or temporary when seeking reemployment to be entitled to reemployment. Not so.

3

Section 4312 lays out the four prerequisites a service member must meet to qualify for reemployment under USERRA. 38 U.S.C. § 4312. An employer cannot impose additional prerequisites to reemployment beyond those identified in this Section. *See* 38 U.S.C. § 4302(b); *see also Petty v. Metro. Gov't of Nashville-Davidson Cnty*, 538 F.3d 431, 440-42 (6th Cir. 2008).

Because Brown met the requirements of Section 4312, he was entitled to reemployment under USERRA Section 4313. *Id*. The burden then shifted to Con-way to use "reasonable efforts" to accommodate Brown's disability for his escalator position, or the position as close as possible to that position for which Brown could be qualified to perform. *See* 38 U.S.C. § 4313(a)(3); 20 C.F.R. § 1002.226; *see also Petty*, 538 F.3d at 444. However, Con-way argues that "to comply with the obligations to service members with disabilities, an employer must know the nature and disability and its impact on the service member's ability to perform any of the position outlined in Section 4313(a)(3)." Con-way Resp. at 9. Con-way cites no section of USERRA, its implementing regulations, or case law to support its proposition. There is no such authority.

Addressing a similar argument in *Brown v. Prairie Farms Dairy, Inc*., the court rejected the employer's position that it could not reasonably accommodate the disabled service member because he failed to provide sufficient medical documentation or to communicate sufficiently with the employer about his disability. 872 F. Supp. 2d 637, 642-44 (M.D. Tenn. 2012). Noting both that an employer must use reasonable efforts to accommodate the disability of a returning service member and that the employer bears the burden of proving that the returning veteran is not qualified under Section 4313, the court held that "once Plaintiff has satisfied the prerequisites in § 4312 . . . then Plaintiff must be reemployed, and only then, when determining the particular position in which to reemploy Plaintiff, can Defendant consider Plaintiff's qualifications." *Id*. at

644-45. After reemployment, when determining the position in which to place the disabled service member, the employer is solely responsible for identifying positions that the service member can perform safely, and has a duty to disclose all such positions. *See* 70 Fed. Reg. 75,246, 75,277 (Dec. 19, 2005), available at 2005 WL 3451172, *75277 (F.R.); *see also Kirbyson v. Tesoro Refining and Marketing Co.*, 795 F. Supp. 2d 930, 945-46 (finding triable issue as to whether employer failed to identify and discuss with disabled service member any possible accommodations of his disability). The service member is responsible for providing pertinent information about his capabilities and disabilities to assist the employer in determining the appropriate position under USERRA. *See id.* There is no requirement under USERRA that service members distinguish between a temporary or permanent accommodation. Brown met his responsibility in 2009 by providing Con-way the 2008 functional capacity evaluation that explained his disability and prognosis. Brown Resp. to Con-way SOF ¶¶ 13-16.

Any implication that Brown somehow bamboozled Con-way regarding the extent of his injuries to gain reemployment in a position to which he was not entitled when he returned from Iraq rings hollow. In 2009, neither Brown nor the doctor who performed his functional capacity evaluation knew whether his service-related injury would heal. Brown Resp. to Con-way SOF ¶¶ 13-16. Brown reasonably relied on information provided by medical professionals who were responsible for evaluating his condition. Con-way's attempt to require what amounts to medical clairvoyance by disabled veterans would place an impossible hurdle to reemployment not contemplated or allowed by USERRA. The Court must reject this argument.

Regardless of whether USERRA allows employers to impose additional requirements, however, Con-way's argument still fails to logically state why Brown's 2009 characterization of the permanency of his injuries would matter to his reemployment right to his escalator position

in 2012. Con-way's argument implies that if Brown had only told Con-way in 2009 that the injury he suffered in Iraq would disable him from the DSR position for three years, then USERRA would have required Con-way to reemploy him as a DSR in 2012. Whether Brown called the disability permanent or temporary in 2009, however, is irrelevant to whether USERRA required Con-way to reemploy Brown as a DSR in 2012. Con-way's USERRA argument is that it had no "continuing" legal duty to Brown after he healed because it had already reemployed him as a CSR in 2009. Con-way Resp., at 5-9. Brown's 2009 characterization of his disability is immaterial to Con-way's legal position as to whether it had a continuing duty in 2012. Thus, Con-way's focus on Brown's statements in 2009 about his disability is meaningless under USERRA.

The most absurd aspect of Con-way's argument is that Con-way admits in this litigation that Brown's disability was temporary. Con-way admits that Brown's military injuries prevented him from performing as a DSR from January 2009 until July 25, 2012; that Brown then provided it with a medical release from his doctor stating that he had no more work restrictions; and that since at least March 2013 (when Con-way hired him into an open DSR position but refused to provide him his May 2004 seniority date) Brown has been physically able to perform all of the functions of a DSR. Brown SOF at ¶¶ 20, 24, 39. Thus, Con-way admits that Brown was disabled due to his military service, and that he healed sometime between July 2012 and March 2013 sufficiently to perform as a DSR again. Although in 2009 Brown had no way of knowing he would heal, Con-way's argument tries to punish Brown by denying him full reemployment for unexpectedly recovering from his disability.

**C.     Con-way's Collateral Estoppel Affirmative Defense Is Without Merit**

Con-way argues that even though Brown's disability was temporary, the Court should ignore this undisputed fact because Brown's prior conduct should estop him from asserting it: "Even if Plaintiff had attempted to present facts showing that he had a temporary disability which Con-way (unknowingly) accommodated for nearly three years, he would be precluded from doing so pursuant to various doctrines of estoppel." Con-way Resp., at 3. Con-way argues that the doctrine of collateral estoppel applies because in a prior lawsuit a court found that Brown had a disability that permanently prevented him from performing his DSR duties.[2]

But as explained more fully in Brown's response to Con-way's cross motion for summary judgment, Dkt # 72, ("Brown Opp."), the prior court never determined the permanency of Brown's military injuries because that fact was not at issue in the prior case; the parties agreed as to the nature of Brown's military injuries.[3] Brown Opp. at 7-9 (citing to *Brown v. Con-way*, 891 F. Supp. 2d 912, 914-18 (N.D. 2012) ("*Brown I*"). Rather the prior court merely reiterated the parties' factual assertion from their statements of undisputed facts, which was neither a factual nor a legal conclusion of that case. *Id*. Moreover, Con-way's argument ignores that Con-way now admits that Brown has indeed healed from his service-connected disability sufficiently to be able to perform the DSR position. Brown SOF at ¶¶ 20, 24, 39. For Con-way to argue that Brown is precluded from bringing his current claims because of the parties' prior statements of

---

[2] Con-way asserts that in 2009, it went beyond USERRA's requirements by creating a position for Brown because it "could have terminated [Brown's] employment (and thereby avoided this lawsuit)." Con-way Resp. at 10. There has been no legal finding that Con-way could have lawfully terminated Brown in 2009 when he returned from military service and sought reemployment. Con-way never provided such evidence and the court made no such ruling. The prior court simply held that Con-way met or exceeded its USERRA obligations in finding that Con-way did not violate USERRA in 2009. *Brown v. Con-way*, 891 F. Supp. 2d 912, 918 (N.D. 2012).

[3] Brown incorporates by reference all arguments made in his Memorandum of Law in Opposition to Defendant Con-way Freight Inc.'s Motion for Summary judgment (Dkt # 71) as Con-way asserted the affirmative defenses of collateral estoppel, judicial estoppel, and equitable estoppel in its cross motion.

undisputed, honestly believed, but incorrect facts from the prior case, which Con-way now admits, is absurd. Even if the issues were the same, the "facts" relied on in the prior case have changed, and occurred after the ruling in the prior case. Therefore, collateral estoppel does not apply. *See Montana v. United States*, 440 U.S. 147, 159 (1979) ("Changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues.")

### D. Con-way's Judicial Estoppel Affirmative Defense Also Fails

Con-way also urges this Court to judicially estop Brown from "recast[ing] his permanent disability as anything other than permanent simply because he claims now to have recovered from it." Con-way Resp., at 4. Because Con-way admits that Brown has actually recovered from his disability, Con-way's argument would require that the Court estop Brown from asserting a fact that Con-way does not dispute and knows to be true. Con-way argues that the Court should impose this discretionary doctrine, as a matter of law, on the legal fiction that Brown is "permanently" disabled because Brown allegedly took that position in the prior lawsuit, and in seeking disability benefits from the United States Department of Veterans Affairs ("VA") and the Department of the Navy ("Navy"). Con-way's attempt at creative fiction must be rejected.

First, Con-way's judicial estoppel affirmative defense should not even apply to Brown's USERRA claims. In addressing similar estoppel arguments asserted by an employer, the Sixth Circuit found that equitable affirmative defenses cannot serve as a bar to a service member's claim for reemployment because USERRA sets forth the only requirements necessary for a returning service member to be entitled to reemployment under Section 4312. *See Petty v. Metro. Gov't of Nashville-Davidson Cnty,* 687 F.3d 710, 721 (6th Cir. 2012) (finding that a service member's "alleged dishonesty cannot serve as a basis . . . for limiting [his] right to

reemployment") (internal citations omitted). There is no dispute that Brown met USERRA's requirements for reemployment under Section 4312. Thus, this Court should follow *Petty*, and not bar Brown's reemployment claim based on the common law equitable affirmative defense of judicial estoppel. Rather, this Court should reject Con-way's argument as a matter of law because judicial estoppel does not apply to USERRA reemployment claims.

Second, even if the Court entertains the merits of Con-way's judicial estoppel argument, the doctrine cannot apply here because the position taken by Brown in this case is not "clearly inconsistent" with the positions he took in the other prior proceedings. Brown Opp. at 10-14; *see also New Hampshire v. Maine*, 532 U.S. 732, 750-51 (2001) (holding for judicial estoppel to apply a party's later position must be clearly inconsistent with a prior position, and the party must have succeeded in the prior proceeding). As explained above, Brown did not succeed in convincing the prior court that he had a permanent shoulder disability. Rather, based on both parties' undisputed statements of fact, the prior court merely stated in its factual recitation that Brown's "restrictions are permanent, as Brown's condition is not expected to improve." *Brown I*, 891 F. Supp. 2d at 913-914 (emphasis added). However, Con-way now admits that this fact has changed. *See* Brown SOF at ¶¶ 20, 24, 39. Judicial estoppel cannot apply here because Brown has not taken "clearly inconsistent" positions. Moreover, Brown did not succeed in convincing the court of anything in *Brown I*; rather, Con-way won on all the disputed issues.

Regarding Brown's seeking VA and Navy disability benefits, Con-way ignores that the definition of "disability" for purposes of performing the DSR position at Con-way, differs from the definition of what qualifies for as a "disability" for a veteran seeking benefits before the VA, or what qualifies as a "disability" for a service member seeking benefits from the Navy. The VA's disability benefits application process does not include a vocational assessment of any

kind. Brown Opp., Ex. 5, Dkt # 72-5, (Aff. of William Russo, acting director of the VA's Office of Regulation Policy and Management). Similarly, the Navy determines the fitness of a service member for his *military* duties, and a rating of a total physical disability rating of 20%, as Brown was determined to have, "does not in any way address whether or not the service member can perform his or her specific civilian job." Brown Opp., Ex. 6, Dkt # 72-6, (Decl. of John Reeser, President for the Secretary of the Navy Council of Review Boards Physical Evaluation Board), ¶ 13; *see also* ¶¶ 5-8, 12, 14. Because it was not relevant before either the VA or the Navy whether Brown was disabled from doing his DSR position at Con-way, he never asserted any inconsistent position at those proceedings. Brown can consistently be disabled from further military service or under the VA's definition and still be physically able to perform as a DSR. Because there is no inconsistency that justifies the use of judicial estoppel to require this Court to adopt a fiction of Brown being permanently disabled from his DSR duties, the substance of Con-way's judicial estoppels argument also fails. Con-way's veiled attempts to cast aspersions on Brown for seeking benefits to which he was entitled as a disabled veteran while also lawfully seeking to maintain his livelihood with Con-way should carry no weight.

## III. CONCLUSION

Brown has shown that USERRA Sections 4313 and 4316, and USERRA's implementing regulations, required Con-way to reemploy Brown in his pre-service DSR position and provide his May 2004 seniority rank when Brown's service-connected injury healed sufficiently for him to perform the DSR duties. In defense, Con-way has provided inapposite case law and unsupported estoppel affirmative defenses. Therefore, this Court should grant Brown's motion for summary judgment.

Dated: July 14, 2015               Respectfully submitted,

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

DELORA L. KENNEBREW
Chief
Employment Litigation Section

/s/ Patricia L. Stasco
KAREN D. WOODARD
(MD Bar No. Not Issued)
Deputy Chief
PATRICIA L. STASCO
(D.C. Bar No. 490041)
JEFFREY MORRISON
(MO Bar No. 44401)
Senior Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
950 Pennsylvania Avenue, NW
PHB 4613
Washington, D.C. 20530
Telephone: (202) 353-2297
Facsimile: (202) 514-1105
Email: patricia.stasco@usdoj.gov

**ATTORNEYS FOR DALE S. BROWN**

**CERTIFICATE OF SERVICE**

On July 14, 2015, I served the foregoing **Plaintiff Dale S. Brown's Reply to Defendant Con-way Freight Inc.'s Response to Brown's Motion for Summary Judgment** on all counsel of record via the court's ECF system:

Susan Bassford Wilson, Esquire
Constangy, Brooks & Smith, LLP
200 S. Wacker Drive, Suite 3100
Chicago, IL 60606
SWilson@constangy.com

Frank Shuster, Esquire
Constangy, Brooks & Smith, LLP
230 Peachtree St., NW, Suite 2400
Atlanta, GA 30303-1557
FShuster@constangy.com

/s/ Patricia L. Stasco
PATRICIA L. STASCO