IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DALE S. BROWN, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 14 C 2055 |
| Plaintiff, | | Judge Virginia M. Kendall |
| v. | | |
| CON-WAY FRIEGHT, INC., | | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dale S. Brown filed this action against Defendant Con-Way Freight Inc. ("Con-way") alleging it violated Sections 4313 and 4316 of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, *et seq*, when it failed to reemploy him in the job that he had held prior to his deployment to Iraq once he recovered from his service-connected disability. The parties have filed cross-motions for summary judgment. For the following reasons, the Court grants Con-way's Motion for Summary Judgment (Dkt. No. 60) and denies Brown's Motion for Summary Judgment (Dkt. No. 63.)

**BACKGROUND**

**A.     Factual Background**

Prior to January 2006, Brown was employed by Con-way as a Driver Sales Representative ("DSR"). (Dkt. No. 72 at ¶ 4.) He had a seniority date for shift bidding purposes of May 2004. (Dkt. No. 69 at ¶¶ 10-11.) A DSR's primary job duties included, but were not limited to, loading and unloading freight and operating a tractor trailer. (*Id.* at ¶ 9.) In addition, Brown was frequently required to lift 50 lbs, sometimes more, over his head. (Dkt. No. 72 at ¶ 12.) In January 2006, Brown was called into active duty in the Naval Reserve. (*Id*. at ¶ 5.)

Brown was honorably discharged in January 2009. (*Id*. at ¶ 6.) During his time serving the country in Iraq, Brown injured or aggravated his left shoulder, rotator cuff, and bicep. (Dkt. No. 69 at ¶ 16.)

In August 2008, Brown applied to the Veterans Administration ("VA") for benefits for his service-related injuries, including those relevant to this case. (Dkt. No. 72 at ¶ 25.) One month later, Brown attended a hearing before the Navy's Physical Evaluation Board ("PEB"), during which he claimed that he should be assigned to the Navy's Permanent Disability Retired List ("PDRL") due, in part, to his shoulder injuries. (*Id*. at ¶ 28.) In November 2008, the PEB, after determining that Brown had a 10% disability to his left arm, a 10% disability to his right shoulder, and a 10% disability to his foot, placed Brown on the Navy's Temporary Disability Retired List ("TDRL"). (*Id*. at ¶ 29.) On September 2, 2009, the VA issued Brown a combined 60% disability rating, 20% of which was related to his shoulder injury. (*Id*. at ¶ 26.) The VA began paying Brown monthly disability benefits for "static" disabilities, *i.e.* disabilities deemed to be permanent. (*Id*. at ¶¶ 26, 27.)

In January 2009, Brown sent Con-way a letter requesting reemployment pursuant to USERRA, and was subsequently reemployed as a Customer Service Representative (CSR) a few weeks later. (*Id*. at ¶¶ 8-9.) Consistent with his prior representations to the VA and PEB, Brown informed Con-way that his injuries would not allow him to perform his functions as a DSR. (Dkt. No. 69 at ¶ 19; *see also Brown v. Con-Way Freight, Inc.*, 891 F. Supp. 2d 912, 918 (N.D. Ill. 2012) (Court stating that "Brown admitted, from his first communications with Con-way regarding reemployment, that he could not perform the functions of a DSR because he could not do heavy lifting or pushing and pulling.").) Con-way changed Brown's seniority rank to February 2009 at that time. (*Id*. at ¶ 22.)

On July 25, 2012, Brown gave Trish Engle, his personnel supervisor at Con-way, a copy of a medical release indicating that he had no further work restrictions and could drive trucks again. (*Id*. at ¶ 24.) In August and October 2012, Brown asked Con-way to reinstate him to his DSR position and adjust his seniority date accordingly. (*Id*. at ¶ 31.) In an October 18, 2012 letter Con-way responded that it had already met its obligations under USERRA, and that Brown would have to apply for a DSR position when one became available. (*Id*. at ¶¶ 33-35.) Brown did so, and was placed in a DSR position in March 2013. (*Id*. at ¶¶ 36-37.) While Con-way states that it rehired Brown to the DSR position in this instance, Brown disputes that characterization. (Dkt. No. 72 at ¶ 11.) Con-way also changed Brown's seniority date to March 2013. (Dkt. No. 69 at ¶ 38.) Had Brown been granted his earlier seniority date of May 2004, he would have been paid an additional $89,857 from July 30, 2012 to March 16, 2015. (*Id*. at ¶ 42.)

From 2008 to 2013, Brown was evaluated at 18 month intervals to determine whether he could return to active duty. (*Id*. at ¶ 31.) In February 2013, six months after representing to Con-way that he no longer had any work restrictions, Brown submitted a certified Formal Hearing Petition to the Navy's PEB stating that he was unfit for service and that he should be assigned to the Permanent Disability Retired List. (*Id*. at ¶ 35.) In his Petition, Brown cited 10% disabilities for each of the following: right shoulder pain, left shoulder pain, lumbosacral strain, plantar fasciitis left foot, and a foot injury. (Dkt. No. 61-8 at 1-2.) On March 5, 2013, the PEB concluded that Brown had service-related disabilities to his left and right shoulders that created "a significant impact [his] ability to perform his [military] duties including: unable to do prolonged, heavy work overhead," and assigned him a total disability rating of 20%. (Dkt. No. 72 at ¶ 37.) Brown subsequently filed this suit on March 24, 2014.

3

B. **Prior Litigation**

In July 2010, Brown brought an action against Con-way alleging that the company violated USERRA when it reemployed him in a lower-paying position following his honorable discharge. *See Brown v. Con-Way Freight, Inc.*, 891 F. Supp. 2d 912 (N.D. Ill. 2012) (hereinafter "*Brown I*").[1] Brown's 2010 Complaint alleged that he had "suffered a permanent disability" during his military service that prevented him from working as a DSR, though the parties now dispute whether the Court made a factual finding on the permanency issue. (Dkt. No. 72 at ¶¶ 18, 23.) The Court ultimately granted Con-way's motion for summary judgment, holding that Con-way had met or exceeded its reemployment obligations to Brown under USERRA when it created a CSR position for him in 2009. (*Id*. at ¶ 22.) Accordingly, the Court entered judgement for Con-way on all claims. (*Id*.) Brown did not appeal the Court's decision.

## STANDARD OF REVIEW

On cross-motions for summary judgment, each movant must satisfy the requirements of Rule 56 of the Federal Rule of Civil Procedure. *See Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th

---
[1] The case was brought before Judge Elaine Bucklo.

Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## **DISCUSSION**

Brown contends that Con-way violated his rights under USERRA Sections 4313 and 4316 respectively when it failed to reassign him to his proper escalator position[2] with his appropriate seniority date after he recovered from his injuries. (Dkt. No. 1.) Con-way, in its own motion for summary judgment, responds by arguing that it has already met its obligations under USERRA, as decided in *Brown I*, and that no ongoing obligations exist in this case.

As a general matter, "[t]he USERRA provides that a person who has performed service in a uniformed service 'shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that ... performance of service.'" *See, e.g., Pfeifer v. Caterpillar Inc.*, No. 98 C 542, 2000 WL 310312, at *12-13 (N.D. Ill. Mar. 24, 2000) (quoting 38 U.S.C. § 4311(a)). More specifically, the USERRA performs four key functions:

---

[2] The escalator position is that the principle that a returning service member should be placed in a position that "reflects with reasonable certainty the pay, benefits, seniority, and other job prerequisites, that he or she would have attained if not for the period of service. Depending upon the specific circumstances, the employer may have the option, or be required, to reemploy the employee in a position other than the escalator position." 20 C.F.R. § 1002.191. Where a service member is disabled during his service and cannot be employed in his escalator position, he must either be placed "(A) in any other position which is equivalent in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform with reasonable efforts by the employer; or (B) if not employed under subparagraph (A), in a position which is the nearest approximation to a position referred to in subparagraph (A) in terms of seniority, status, and pay consistent with circumstances of such person's case." 38 U.S.C. § 4313(a)(3)(A), (B); *see also Brown I*, 891 F.Supp.2d at 917.

5

> First, it guarantees returning veterans a right of reemployment after military service. 38 U.S.C. § 4312. Second, it prescribes the position to which such veterans are entitled upon their return. 38 U.S.C. § 4313. Third, it prevents employers from discriminating against returning veterans on account of their military service. 38 U.S.C. § 4311. Fourth, it prevents employers from firing without cause any returning veterans within one year of reemployment. 38 U.S.C. § 4316.

*Petty v. Metro. Gov't of Nashville-Davidson Cty.*, 538 F.3d 431, 439 (6th Cir. 2008). "Courts have recognized that '[b]ecause USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries.'" *Id*. (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006)); *see also Davis v. Advocate Health Ctr. Patient Care Exp.*, 523 F.3d 681, 683 (7th Cir. 2008).

**A.    Section 4313 Claim**[3]

Brown contends that Con-way failed to meet its obligations under Section 4313 when it refused to reemploy him to his escalator position after he had fully healed. In making this argument, Brown states that Section 4313's "reasonable efforts" language, when read in light of the Department of Labor's ("DOL") implementing regulation 20 C.F.R. § 1002.225, extends past the instant of reemployment. (Dkt. No. 71 at 2.) Con-way responds that Section 4313 – and by association, Section 4312 – is only limited to the "instant of reemployment," and does not create any ongoing obligations for the employer. (Dkt. No. 68 at 5-9.)

While the interplay between Sections 4311, 4312, 4313 has been a point of disagreement, many courts have found the Eighth Circuit's analysis of the interaction helpful:

> ***Section 4312 protects service members at the instant of seeking reemployment***, entitling the service member to reemployment in either the position she would have been in had she not left for military service "or a

---
[3] Although Brown only cited to Section 4313 in his Complaint, both parties have briefed Section 4312 in relation to the 4313 claims. (*See, e.g.,* Dkt. No. 68 at 5-9; Dkt. No. 75 at 4.) As such, this Court addresses contentions regarding both sections as necessary.

> position of like seniority, status and pay, the duties of which the person is qualified to perform." *38 U.S.C. § 4313(a)(2)(A) (defining rights set forth in § 4312, which entitles a person to be rehired upon return from military service). Section 4311 applies after reemployment has occurred* and "prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir.2006) (noting that § 4312 protects military members up to the instant of reemployment while other sections of USERRA, such as § 4311 and § 4316, protect the member after reemployment occurs).

*Clegg v. Arkansas Dep't of Correction*, 496 F.3d 922, 930 (8th Cir. 2007) (emphasis added); *see also Petty*, 538 F.3d at 439-40 (Sixth Circuit quoting and citing *Clegg* approvingly); *Ashman v. Winnebago Cty. Sheriff's Dep't*, No. 11 C 50388, 2015 WL 641784, at *3 (N.D. Ill. Feb. 13, 2015) (citing the *Clegg* analysis as the "prevailing view of the interaction between" Sections 4311, 4312, and 4313). Despite Brown's contentions to the contrary[4], this Court uses this understanding of USERRA in reviewing the parties' claims.

Here, it is undisputed that Brown was reemployed by Con-way only a few weeks after he reached out to the company in January 2009, shortly after he was honorably discharged from the Navy. (Dkt. No. 72 at ¶¶ 8-9.) As such, Brown does not have a claim under Sections 4312 or 4313, which only apply to the instant of reemployment. This holding is bolstered by Brown's failure to bring any discrimination action under Section 4311[5] and the *Brown I* Court's finding that Con-way had "met or exceeded its obligations under USERRA" at the moment of reemployment "when it created a position for Brown as a CSR." *Id.*, 891 F. Supp. 2d at 918. Even more, Brown has failed to provide any case law indicating that the "reasonable efforts" language within Section 4313 requires that the section's protections reach beyond the moment of

---

[4] Brown argues that *Clegg* and *Petty* are factually inapposite and thus are irrelevant to this case. (Dkt. No. 71 at 4.) Regardless of the factual circumstances of those cases, the statements of law are, in this Court's view, consistent with both the structure and intent of the USERRA. Brown does not bring forth meaningful case law to the contrary.
[5] The Court need not to address any potential argument under Section 4311 as Brown failed to state a claim pursuant to that section and because Section 4311 discrimination claims are held to a different legal standard. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 284-85 (7th Cir. 2015).

reemployment. Brown's contentions regarding the DOL's interpretation of the USERRA are unavailing. While the Court recognizes that it must defer to the DOL's interpretation under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) where the law is ambiguous, the factual circumstances of this case set it apart. Brown, in his motion for summary judgment, argues that the DOL's commentary states that "when a service member has a *temporary* service-connected disability the employer should reemploy the service member in an interim position…." (Dkt. No. 63 at ¶ 16.) Here, however, Brown clearly represented to both Con-way and to the Court in *Brown I* that his injuries were *permanent*. *See Brown I*, 891 F. Supp. 2d at 914 ("These restrictions are permanent, as Brown's condition is not expected to improve."). Brown fails to contend, and this Court does not find, that the DOL's interpretation of USERRA would allow for a situation where an employee can make one representation, rescind that representation, take the exact opposite position, and yet still fall within the scope of the protections of the statute.[6] Even taking into account the "considerable deference" this Court should give to reasonable agency interpretations, *see Chevron*, 467 U.S. at 844, the factual circumstances of this case distinguish it from those cited by Brown.

As such, the Court grants Con-way's motion for summary judgment in regards to Section 4313, and denies Brown's motion for summary judgment as related to the same.[7]

**B.     Section 4316 Claim**

Brown contends, separately from his Section 4313 claim, that Con-way violated his rights under Section 4316(a)[8] of the USERRA when it refused to provide him his May 2004 seniority

---

[6] This may have been a different case had Brown told Con-way upon returning from service that his injuries were temporary or that he was seeking treatment and that he was potentially going to recover. However, those are not the facts before this Court.

[7] Given this finding, the Court declines to address the parties' contentions regarding collateral and judicial estoppel in regards to the Section 4313 claim.

[8] Section 4316(a) provides that "[a] person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the

8

rank at two different instances: first, when he was reemployed as a CSR in February 2009 and, second, when Brown sufficiently recovered from his service injuries in July 2012. (Dkt. No. 65 at 11-12.) Brown concedes that any forthcoming back pay damages were "significantly mitigated" when Brown was hired into the open DSR position in March 2013, but argues that there is still back pay outstanding. (*Id*.) Con-way seeks summary judgment on the issue arguing that Brown should not be allowed to relitigate this issue after receiving an adverse ruling in *Brown I* and that, in any event, Section 4316(a) does not create ongoing obligations. (Dkt. No. 68 at 10; Dkt. No. 60 at 7.)

In regards to Brown's rehiring in February 2009, the Court holds that the *Brown I* Court did make a legal determination that Con-way met its burden under USERRA when it "created a position for Brown as a CSR" upon his returning from military service. *Id*., 891 F. Supp. 2d at 918. This Court finds no reason to revisit that holding, particularly as Brown seems to admit that he suffered no harm from the ruling, *see* Dkt. No. 71 at 7 ("[t]his violation did not cause Brown any financial harm while he was employed as a CSR because his seniority rank did not affect his CSR pay."), and because Brown had the opportunity to appeal the *Brown I* Court's decision but failed to do so. (*See* Dkt. No. 60 at 10.)

Turning to the second argument, Brown contends that Con-way should be found liable for failing to reemploy him to his pre-service DSR position in July 2012 and for failing to change his seniority date to May 2004 at that time. Brown cites to the DOL's regulations which provide in part that the employer "must determine the seniority rights, status, and rate of pay as though the employee had been continuously employed during the period of service." 20 C.F.R. § 1002.193. He further argues that the DOL has stated that a service member who "incurs a

---

uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed."

temporary disability may be entitled to interim reemployment in an alternate position." Uniformed Services Employment and Reemployment Rights Act of 1994, As Amended, 70 FR 75246-01, 75,277 (Dec. 19, 2005). As such, Brown argues that because he recovered from his injury, he should have been rehired to his DSR position with a seniority date of May 2004. However, his position suffers from a number of fatal flaws.

1. Judicial Estoppel

Brown is judicially estopped from bringing his present claims due to his prior, inconsistent representations regarding the permanency of his injuries. "Judicial estoppel is 'an equitable concept providing that a party who prevails on one ground in a lawsuit may not ... in another lawsuit repudiate that ground.'" *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005), *as amended* (Nov. 21, 2005) (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir.1999)). Although judicial estoppel is not subject to "inflexible prerequisites," three "factors inform the decision whether to apply the doctrine" – first, that the party's later position is "clearly inconsistent" with its prior position; second, that the party "succeeded in persuading a court to accept the party's earlier position"; and third, that the party seeking to "assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (internal citations and quotations omitted). A court may take in account "additional considerations [which] may inform the doctrine's application in specific factual contexts." *Id*. at 751. "What matters for purposes of judicial estoppel is whether, in reaching its earlier decision, the court relied on the representation of the one against whom estoppel is asserted." *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 662 (7th Cir. 2010). Finally, judicial estoppel may be

applied to positions taken in both judicial and quasi-judicial proceedings. *DeGuiseppe v. Vill. of Bellwood*, 68 F.3d 187, 191 (7th Cir. 1995).

Here, it is undisputed that Brown previously represented that his injuries were ***permanent*** to Con-way upon returning from service, the *Brown I* Court throughout the parties' prior litigation, the VA in 2009, and to the Navy's PEB in both 2008 and 2013.[9] Put simply, Brown's consistent and unequivocal representations in the lead-up to this litigation were that his injuries were permanent and that he was not going to recover. While Brown now contends that his unexpected recovery should reignite his rights under USERRA, Brown's contentions must be viewed in light of the unique factual circumstances of his case. Given his many representations, the Court holds that to allow him to continue to litigate his claim would effectively allow him to play "fast and loose" with this Court, the *Brown I* Court, the VA, and the PEB. *Airadigm Commc'ns*, 616 F.3d at 661.

The inconsistencies are most pronounced when considering Brown's representations to the PEB in 2013 when he requested that he be placed on the Navy's *Permanent* Disability Retired List. In terms of the first and second factors discussed above, Brown represented to the PEB in February 2013 that he was 10% disabled from his injuries, citing to, in part, pain in his right and left shoulders. (Dkt. No. 61-8.) Based upon that representation, the PEB granted Brown a 10% disability in his shoulders, which was the same rating that he received in 2009 when the PEB found that his disabilities were static. That finding included that Brown would be

---

[9] The parties do not dispute that Brown told Con-way that he was permanently injured and unable to perform the duties required of a DSR. (Dkt. No. 69 at ¶ 19.) Similarly, Brown represented to the *Brown I* Court that his injuries were permanent, underlying the Court's statement that it was undisputed that his "restrictions are permanent, as Brown's condition is not expected to improve." *Brown I*, 891 F. Supp. 2d at 914. Third, after Brown's application describing his injuries, the VA began paying Brown disability benefits for his "static" disabilities. (Dkt. No. 72 at ¶¶ 26, 27.) Finally, in relation to the PEB, Brown does not dispute that he submitted a Formal Hearing Petition, supported by a Functional Capacity Evaluation from Rock Valley Physical Therapy, indicating that he should have been placed on the Navy's *Permanent* Disability Retired List in February 2013. (Dkt. No. 72 at ¶ 35.)

significantly impacted in his ability to perform his military duties, "including: unable to do prolonged, heavy work overhead." Yet, in March 2013, Brown applied to a DSR position, despite the fact that the DSR position often required heavy overhead lifting. (*See* Dkt. No. 60 at 13.) Such representations are clearly inconsistent.

In attempting to rebut this finding, Brown argues that because the "criteria employed by the PEB [in determining the level of disabilities] is different than whether Brown can perform the DSR position," his representations are not inconsistent. (Dkt. No. 71 at 13.) While it may be the case that the criteria are indeed different, a plain reading of the Brown's representations to the PEB and his claim that he was healed to Con-way, all within *months* of each other, indicate that Brown claimed and was held to be unable to perform heavy overhead tasks in one instance, and yet, in the other instance, claimed to be able to perform such tasks. *See Butler v. Vill. of Round Lake Police Dep't*, 585 F.3d 1020, 1022-23 (7th Cir. 2009) (finding police officer's position that he was unable to perform basic police duties to secure disability benefits and later position that he was able to perform those duties for his damages claim inconsistent). As such, Brown's contention that "the PEB's evaluation does not include any vocational evaluation of whether the service member can perform his civilian position," is unavailing. In regards to the third factor, the Court finds that allowing Brown to continue to litigate his claim would allow him to derive "unfair advantage or impose an unfair detriment" on Con-way. *New Hampshire*, 532 U.S. at 750-51. Here, Con-way created the CSR position for Brown after Brown represented to it that he was permanently injured and would not recover. Had Brown not made such a representation, Con-way states that it would not have created the CSR position or changed Brown's seniority date "thereby avoiding both the current lawsuit and the one in *Brown I*." (Dkt. No. 60 at 15.) While this Court declines to determine whether such an action would have been in

12

violation of USERRA as Brown contends, *see* Dkt. No. 71 at 14-15, the Court does find that Con-way would be harmed if it was forced to relitigate issues that were fully and fairly adjudicated in the *Brown I*.[10]

The Court's finding is bolstered by significant case law applying judicial estoppel in instances in which an individual claims disability, continues to receive disability benefits, and nevertheless seeks reemployment in a position requiring actions that he allegedly cannot perform. *See, e.g., Muellner v. Mars, Inc.*, 714 F. Supp. 351, 355 (N.D. Ill. 1989) ("Among the cases most influential in the development of the doctrine of judicial estoppel are those involving the very situation confronting the court: an individual claims disability, through either judicial or quasi-judicial proceedings obtains a single payment or continuing disability benefits, and then seeks reinstatement to his job."); *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390 (7th Cir. 2005). While Brown argues that these cases are factually inapposite because they deal with Social Security issues, *see* Dkt. No. 71 at 11, the principle underlying those decisions is consistent with the Court's decision here. It is troubling that Brown indicated and received a decision stating that he was unable to lift heavy weights from the PEB, and yet, at nearly the same time, was contending that he should be reinstated to a DSR position that required a similar kind of physical exertion. The actual fact of Brown's recovery and subsequent ability to take on the requirements of the DSR position is a positive outcome, but it is not the issue at bar here as Brown seems to suggest. (*See* Dkt. No. 71 at 13.) Rather, the issue is that Brown previously represented that his injury was permanent, and now, when it benefits him, claims that same injury was in fact

---

[10] At the same time, in its analysis, the *Brown I* Court noted that "[a]n employer is not required to reemploy a veteran on his return from service if no position exists that he is capable of performing." *Brown I*, 891 F. Supp. 2d at 918. Given that Con-way had to create the CSR position for Brown, it is possible that there simply was no other position that Brown could have taken within the company due to his injuries, particularly in light of the fact that the *Brown I* Court rejected Brown's claim that he should have been placed into three other positions that existed within the company. *Id*. at 919-920.

temporary. This is impermissible and the Court holds that Brown "must live with" the factual representations that he made at the previous proceedings. *Opsteen*, 408 F.3d at 392. The Court finds that he is judicially estopped from pursuing this claim under Section 4316(a).

    2.    Equitable Estoppel

The Court holds that Brown is also equitably estopped from pursuing his claim. The basic premise behind equitable estoppel is that a Plaintiff should not be permitted to have it "both ways," *i.e.* Brown cannot legally represent that he was permanently injured when it benefited him and now state that that same injury was temporary in order to gain another benefit. *See Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981); *see, e.g., Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 767 (N.D. Ill. 2005). "The traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). The first prong does not require that the non-moving party "intentionally mislead or deceive" the other party; "[r]ather all that is necessary for invocation of the doctrine of equitable estoppel is that the plaintiff reasonably rely on the defendant's conduct or representations…." *Bomba v. W. L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir. 1978). All of the requirements for equitable estoppel are met in this case.

As discussed above, and as the *Brown I* court noted, both parties agreed that when Brown returned from his military service, his injuries were permanent and "not expected to improve." *Id.*, 891 F. Supp. 2d at 914. Relying on Brown's representation, Con-way created the CSR position for Brown, believing at that time that that position would be his permanent role. Brown, himself, did not indicate in *Brown I* and does not indicate here that he took that position

believing that it was only a temporary one. Brown also failed to appeal the *Brown I* Court's decision which relied on Brown's representations to the Court. As such, in this specific factual context where <u>both parties agreed on the permanency</u> of the service member's injury both at the time of rehiring and in during a prior litigation, the Court finds that placing additional burdens on Con-way, where Con-way already met or exceeded its obligations under USERRA, is unreasonable. Such a decision may discourage this employer, and employers in general, from reemploying self-proclaimed permanently injured service members, who have any possibility of recovery, for fear of future lawsuits. (*See* Dkt. No. 68 at 4 n. 1.) Such an outcome would be categorically opposed to the goals of the USERRA.

In addition, the Court finds that Brown has failed to provide support for his position that because he was eventually hired as a DSR, the same position that he held prior to his service, he is entitled to his old seniority status, particularly in light of the facts of this case. The Court does not find that Section 4316(a) requires that the returning service member has the right to regain the seniority status that he had when he left if the service member was lawfully rehired to a different position with a different seniority status *based on his own unequivocal representations*. This would seem particularly true where the circumstances of the new role, in this case that of a CSR, require a different skillset than the former role. *See* 20 C.F.R. § 1002.225 (requiring "the nearest approximation to the equivalent position, consistent with the circumstances of the employee's case, in terms of seniority, status, and pay" where the service member is disabled). Nothing in the language of Section 4316(a) indicates that Con-way is under any "duty to reemploy Brown to his escalator position," as Brown baldly asserts (*see* Dkt. No. 65 at 12), where Con-way had already lawfully reemployed Brown in 2009. Any other holding to the

15

contrary would constitute an end-around *Brown I* as it would effectively overrule that Court's finding that Con-way met its reemployment obligations.[11]

## **CONCLUSION**

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment (Dkt. No. 60) and denies the Plaintiff's Motion for Summary Judgment (Dkt. No. 63).

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 3/7/2016

---

[11] This finding is further supported by Brown's own posture in regards to the undisputed facts before this Court. Though Section 4316(a) explicitly applies only when a service member is "reemployed under [the USERRA]," Brown disputes the notion that Con-way did in fact "reemploy[]" him as a DSR. (*See* Dkt. No. 72 at ¶ 11). As such, if the Court were to view the facts in a light favorable to Brown, then Con-way's decision to hire Brown for the DSR position in March 2013 falls outside the scope of USERRA protections as it was not an act of reemployment.